## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA

| | |
|---|---|
| ARIANNY CELESTE LOPEZ, CLAUDIA SAMPEDRO, EVA PEPAJ, JANET GUZMAN, KIMBERLY COZZENS a/k/a KIM COZZENS, MARIANA DAVALOS, ROSA ACOSTA, STEPHANIE RAO, and YODIT YEMANE a/k/a JODIE JOE, | Case No. **COMPLAINT** **JURY TRIAL DEMAND** |
| Plaintiffs, | |
| v. | |
| THE SOUND FACTORY, LLC d/b/a THE SOUND FACTORY d/b/a CENTER STAGE BAR & LOUNGE, | |
| Defendant. | |

Plaintiffs ARIANNY CELESTE LOPEZ, CLAUDIA SAMPEDRO, EVA PEPAJ, JANET GUZMAN, KIMBERLY COZZENS a/k/a KIM COZZENS, MARIANA DAVALOS, ROSA ACOSTA, STEPHANIE RAO, and YODIT YEMANE a/k/a JODIE JOE (collectively, "Plaintiffs"), file this Complaint against THE SOUND FACTORY, LLC d/b/a THE SOUND FACTORY d/b/a CENTER STAGE BAR & LOUNGE ("Defendant") respectfully allege as follows:

### BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendant's misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their night clubs, The Sound Factory d/b/a Factory located at 6298 Veterans Pkwy Suite 8E, Columbus, Georgia 31909 and Center Stage Bar &

1

Lounge d/b/a Center Stage, which is located at 6298 Veterans Pkwy Suite 8E, Columbus, Georgia 31909 (hereinafter referred to as the "Night Clubs").

2.      As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) Common Law Right of Publicity; d) Common Law Right of Privacy – False Light; e) Violation of Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370 et seq.; f) Defamation; g) Negligence and Respondeat Superior; h) Conversion; i) Unjust Enrichment; and j) Quantum Meruit.

3.      In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5.      This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.      Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.      According to publicly available records, Defendant THE SOUND FACTORY, LLC, is a limited liability company formed under the laws of the state of Georgia, with its principal place of business located at 6298 Veterans Pkwy Suite 8E, Columbus, Georgia, 31909. Upon information and belief, THE SOUND FACTORY, LLC operates The Sound Factory, which is located at 6298 Veterans Pkwy Suite 8E, Columbus, Georgia 31909 and Center Stage Bar & Lounge, which

is located at 6298 Veterans Pkwy Suite 8E, Columbus, Georgia 31909.

8.      Venue is proper in the United States District Court for the Middle District of Georgia because Defendant's principal place of business is located in Columbus, Georgia, Columbus-Muscogee County.

9.      A significant portion of the alleged causes of action arose and accrued in Columbus, Georgia and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Columbus, Georgia.

## PARTIES

### *Plaintiffs*

10.     Plaintiff Arianny Celeste Lopez ("Lopez") is a well-known professional model, and a resident of Clark County, Nevada.

11.     Plaintiff Claudia Sampedro ("Sampedro") is a well-known professional model, and a resident of Miami-Dade County, Florida.

12.     Plaintiff Eva Pepaj ("Pepaj") is a well-known professional model, and a resident of Los Angeles County, California.

13.     Plaintiff Janet Guzman ("Guzman") is a well-known professional model, and a resident of Los Angeles County, California.

14.     Plaintiff Kimberly Cozzens a/k/a Kim Cozzens ("Cozzens") is a well-known professional model, and a resident of Santa Clara County, California.

15.     Plaintiff Mariana Davalos ("Davalos") is a well-known professional model, and a resident of Colombia.

16.     Plaintiff Rosa Acosta ("Acosta") is a well-known professional model, and a resident of Los Angeles County, California.

17.     Plaintiff Stephanie Rao ("Rao") is a well-known professional model, and a resident of Los Angeles County, California.

18.     Plaintiff Yodit Yemane a/k/a Jodie Joe ("Yemane") is a well-known

professional model, and a resident of Los Angeles County, California.

***Defendant***

19.    Defendant, THE SOUND FACTORY, LLC d/b/a THE SOUND FACTORY d/b/a CENTER STAGE BAR & LOUNGE, is a limited liability company formed under the laws of the state of Georgia and registered to conduct business in Georgia. During times relevant to this action, THE SOUND FACTORY, LLC operated THE SOUND FACTORY AND CENTER STAGE BAR & LOUNGE.

20.    Service of process may be perfected upon Defendant THE SOUND FACTORY, LLC d/b/a THE SOUND FACTORY d/b/a CENTER STAGE BAR & LOUNGE by serving the registered agent for service of process, Marcades Daugherty, who can be located at 2050 Cheshire Bridge Rd 1127, Atlanta, GA 30324.

## FACTUAL ALLEGATIONS

21.    Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

22.    Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

23.    Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendant to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendant.

24.    In the case of each Plaintiff, this apparent claim was false.

25.    Moreover, this misappropriation occurred without any Plaintiff's

knowledge, consent, or authorization.

26.    No Plaintiff has ever received any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

27.    Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

### Plaintiffs' Individual Backgrounds and Careers

28.    Lopez is an American model, businesswoman, and celebrity. Lopez is recognized as one of the most consistent and most popular personalities of UFC where she has worked as an Octagon Girl since 2006. Lopez was the Co-Host of the popular Velocity TV show, Overhaulin'. She is adored around the world for her exotic beauty and great relationship with her fans. Lopez booked her first modeling job when she was just four months old. She excelled in cheer, dance, and gymnastics before attending the University of Nevada Las Vegas (UNLV) to pursue a degree in Fitness Management and Nutrition. Fluent in Spanish, Lopez has quickly become one of the most sought-after talents in the modeling world and has appeared on the covers of some of the world's most foremost magazines including, Playboy, Maxim US, FHM, Maxim Korea, Maxim Philippines, FHM Australia and UFC magazines. In addition to modeling, Lopez has hosted television shows, appeared in short films and recorded some original music. Ms. Celeste is in an elite class of Social Media influencers with over 3 million Instagram followers, over 643.6 thousand X followers, and an incredible 5.8 million fans on Facebook combined with her

personal website.[1]

29.     That we know of, Lopez is depicted in the photos in Exhibit "A" to promote the Night Clubs on its Facebook page and Instagram account. These Images were intentionally altered to make it appear that Lopez was either an employee working at the Night Clubs, that she endorsed the Night Clubs, or that she was otherwise associated or affiliated with the Night Clubs.

30.     Lopez has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

31.     Sampedro is a Cuban born model, mother, and spokeswoman. Sampedro moved to Miami when she was 6 years old and at age 16, was discovered by Elite models. Sampedro has appeared in many catalogues, and magazine editorials. She has a number of cover credits for magazines such as Nine 5 Four, Shock, Face to Face and Mixed. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. Sampedro has three children and is married to former Green Bay's star defensive end Julius Peppers. Sampedro is in the Social Media Influencers top class with over a million Instagram followers and a further combined 150,000 fans on Facebook and X (formerly known as Twitter).

32.     That we know of, Sampedro is depicted in the photos in Exhibit "B" to promote the Night Clubs on its Facebook page. These Images were intentionally altered to make it appear that Sampedro was either an employee working at the Night Clubs, that she endorsed the Night Clubs, or that she was otherwise associated or

---

[1]In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

affiliated with the Night Clubs.

33.    Sampedro has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

34.    Pepaj is a professional model and actress who moved to Hollywood to pursue her career in 2004. Her work includes high fashion runway modeling, print features, and film roles. Pepaj has appeared in films such as The Hand Off, Interior, True Detective, Leather Bar and The Romp, and was a feature model in a national Diet Coke TV commercial campaign. She is also a content creator, and has over 1.3 million Instagram followers, and her YouTube channel, shared with her husband, has over 2.28 million subscribers.

35.    That we know of, Pepaj is depicted in the photos in Exhibit "C" to promote the Night Clubs on its Facebook page. These Images were intentionally altered to make it appear that Pepaj was either an employee working at the Night Clubs, that she endorsed the Night Clubs, or that she was otherwise associated or affiliated with the Night Clubs.

36.    Pepaj has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

37.    Guzman is a social media star who is widely known for her self-titled Instagram page. She has gained popularity there for her modeling and lifestyle photos, surpassing over 2 million followers. She's widely known to be Fashion Nova's number 1 featured talent. She mostly promotes the clothes of the Fashion Nova clothing brand on her Instagram and has also appeared on the Fashion Nova

Billboard located at Melrose and Fairfax (California). She was featured in an exclusive video interview with Fashion Nova in March of 2022. She has also seen her janetguzman_TikTok channel become widely popular, with her videos on the platform earning over 1.9 million total likes. She also runs a popular OnlyFans subscription account and a travel/lifestyle/fashion vlog on YouTube.

38.    That we know of, Guzman is depicted in the photos in Exhibit "D" to promote the Night Clubs on its Facebook page and Instagram account. These Images were intentionally altered to make it appear that Guzman was either an employee working at the Night Clubs, that she endorsed the Night Clubs, or that she was otherwise associated or affiliated with the Night Clubs.

39.    Guzman has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

40.    Cozzens is a model and actress who has appeared on an Old Spice national commercial, as well as a New Amsterdam Vodka national commercial. She has modeled for campaigns with Guess, Old Spice, Grey Goose, Sephora Cosmetics, Con Air Hair Tools, Sketcher Shoes, and many more. She has also modeled for Maxim magazine, Sandals Resort, Dodge, and Pepsi to name a few. Kim in total, has signed with 12 top agencies internationally, two of them being LA Models and LATALENT.

41.    That we know of, Cozzens is depicted in the photos in Exhibit "E" to promote Night Clubs on its Facebook page and Instagram account. These Images were intentionally altered to make it appear that Cozzens was either an employee working at the Night Clubs, that she endorsed the Night Clubs, or that she was otherwise associated or affiliated with the Night Clubs.

42.    Cozzens has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

43.    Davalos established a modeling career in Colombia as one of the most famous and successful models in all of Latin America by the age of 18. Davalos was the face of Nacar cosmetics and has appeared in Maxim magazine, Imagen magazine, Bésame, SOHO TV, Rumbas de la Ciudad, La Granja Tolima, Kiss Catalogue, Deluxe Jeans, Revista Soho, SCRIBE, Coed People, La Gemela mas Dulce, Para Hombre, Spiritual Jeans and Satori. Davalos is constantly listed in "The top sexiest people in the world" lists and whether solo or teamed up with her twin sister is constantly in demand. Davalos' worldwide identity has continued to grow and her earning capabilities have increased dramatically over 500,000 Instagram, Twitter, and Facebook followers.

44.    That we know of, Davalos is depicted in the photos in Exhibit "F" to promote the Night Clubs on its Facebook page. These Images were intentionally altered to make it appear that Davalos was either an employee working at the Night Clubs, that she endorsed the Night Clubs, or that she was otherwise associated or affiliated with the Night Clubs.

45.    Davalos has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

46.    Acosta started her classic ballet studies at the age of four at the Centro de la Cultura in Santiago, Dominican Republic. She later moved on to the ICA,

(Instituto de Cultura y Arte), where she excelled as one of the most gifted students of the academy. After graduating with honors from the ICA and the Ballet School of Norma Garcia with a bachelor's in art with mention to Classic Ballet, she became part of the Dominican Nacional Ballet as the youngest soloist member in 2002. Partaking in all major classic and modern shows in the Dominican Republic, she was nominated twice by the Secretaria de Estado de la Juventud for her work in the category of Cultural Development. She initiated her modeling career in 2004, participating in magazines and television for prestigious Dominican enterprises. Acosta moved to the United States in 2006 where her career took a new turn, distinguishing herself in several areas of the modeling world, featuring in magazines, radio, television programs and commercials and numerous music videos. She has over 52 thousand Facebook followers, over 1.6 million Instagram followers, and over 280,6000 Twitter followers.

47.    That we know of, Acosta is depicted in the photos in Exhibit "G" to promote the Night Clubs on its Facebook page and Instagram account. These Images were intentionally altered to make it appear that Acosta was either an employee working at the Night Clubs, that she endorsed the Night Clubs, or that she was otherwise associated or affiliated with the Night Clubs.

48.    Acosta has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

49.    Rao, who is originally from Miami, FL currently resides in Los Angeles and is an influencer/model. She is currently representing Fashion Nova and has previously worked for Shein & PrettyLittleThing. She has appeared alongside Kim Kardashian in a Carolina Lemke glasses advertisement as well as other high profile

ad campaigns. She has her own website which focuses on providing a fitness journey to her clients and promoting physical, mental, and spiritual wellness. Rao has over 1.1 million Instagram followers.

50.   That we know of, Rao is depicted in the photos in Exhibit "H" to promote the Night Clubs on its Facebook page and Instagram account. These Images were intentionally altered to make it appear that Rao was either an employee working at the Night Clubs, that she endorsed the Night Clubs, or that she was otherwise associated or affiliated with the Night Clubs.

51.   Rao has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

52.   Yemane is a social media and modeling influencer with well over 1 million followers on Instagram, while she has appeared in music videos with Tyga and appeared on Nick Cannons' Wild N Out and worked for Pretty Little Thing Fashion House this model of Eritrean descent Is mostly known and now famous in the fashion industry for her near decade long association and Brand Ambassador with Fashion Nova (which has more than 10% of the USA fashion market) she was the first model to have her own clothing line collaboration with Fashion Nova, and the 34 year old is regarded as one of the highest paid models in the industry.

53.   That we know of, Yemane is depicted in the photos in Exhibit "I" to promote the Night Clubs on its Facebook page and other related social media accounts. These Images were intentionally altered to make it appear that Yemane was either an employee working at the Night Clubs, that she endorsed the Night Clubs, or that she was otherwise associated or affiliated with the Night Clubs.

54.   Yemane has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or

affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendant's Business Activity and Misappropriation***

55.     Defendant operates (or operated, during the relevant time period,) a so-called Night Club, where they are (or were) engaged in the business of selling alcohol and food in a sexually charged atmosphere.

56.     Defendant owns, operates, and controls the Night Clubs social media accounts, including its Facebook, Twitter, and Instagram accounts.

57.     Defendant used the Night Clubs Facebook, Twitter, and Instagram accounts to promote the Night Clubs, and to attract patrons.

58.     Defendant did this for its own commercial and financial benefit.

59.     Defendant has used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at the Night Clubs, endorsed the Night Clubs, or was otherwise associated or affiliated with the Night Clubs.

60.     Defendant used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed the Night Clubs to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

61.     Defendant was well aware that none of the Plaintiffs have ever been affiliated with or employed by the Night Clubs, and at no point have any of the Plaintiffs ever endorsed the Night Clubs or otherwise been affiliated or associated with the Night Clubs.

62.    All of Defendant's activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

63.    Defendant as never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

64.    Plaintiffs have never received any benefit from Defendant's unauthorized use of their Images.

### Standard Business Practices in the Modeling Industry

65.    It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

66.    The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

67.    Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

### Defendant's Misappropriation of Plaintiffs' Images

68.    Defendant were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed the Night Clubs.

69.    Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

70.    In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with the Night Clubs.

71.    At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

72.    No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

73.    No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including the Night Clubs website, Twitter, Facebook, or Instagram accounts.

74.    Defendant used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

## FIRST CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)

75.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

76.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Plaintiffs from the conduct described herein.

77.    Defendant used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendant's establishment, or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's establishment, and thereby generate revenue for Defendant.

78.    Thus, this was done in furtherance of Defendant's commercial benefit.

79.    Plaintiffs are in the business of commercializing their identity and

selling their images to reputable brands and companies for profit. Defendant's customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggest the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

80.    Both Plaintiffs and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

81.    As such, an unauthorized use of Plaintiffs' image to promote an establishment created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendant used Plaintiffs' image for advertising purposes, that is to promote their business enterprises, as such, Defendant's unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness.

82.    Defendant's use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendant's establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

83.    Despite the fact that Defendant was at all times aware that Plaintiffs neither worked at, nor endorsed its establishment, nevertheless, they used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or

affiliation with Defendant's establishment.

84.    Defendant knew that their use of Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendant's establishment.

85.    Upon information and belief, Defendant's use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

86.    As a direct and proximate result of Defendant's actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendant.

87.    Further, any failure, neglect or default by Defendant will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

88.    Due to Defendant's unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

89.    WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## SECOND CAUSE OF ACTION

**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)**

90.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

91.    Section 43 of the Lanham Act, 15 U.S.C. § 1125, et seq. applies to Defendant and protects Plaintiffs from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

92.    Defendant used Plaintiffs' image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use their image in order to advertise, promote, and market Defendant's businesses, Defendant's establishment, and/or Defendant's establishment events and activities.

93.    Defendant's use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendant's businesses, Defendant's establishment, and/or Defendant's events and activities as described in this Complaint was false and misleading.

94.    Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant events and activities and/or that Plaintiffs

would participate in or appear at the specific events promoted in the advertisements.

95.    Defendant's false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant's establishment, as to the general quality of attendees and participants of Defendant's establishment and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, Defendant's establishment or Defendant establishment events or activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities.

96.    Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or was otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses, or Defendant establishment events and activities, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market Defendant's businesses or Defendant establishment events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendant's establishment, visit Defendant's establishment, and participate in events at Defendant's establishment and had a material effect and impact on the decision of members and prospective members and participants to join Defendant's establishment, visit Defendant's establishment and take part in the events at Defendant's establishment.

97.    Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's establishment and their activities and attracting clientele to Defendant's establishment.

98.    Defendant knew or should have known that their unauthorized use of Plaintiff's image, likeness and/or identity would cause consumer confusion as described in this Complaint.

99.    Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

100.    Defendant's wrongful conduct as described herein was willful.

101.    As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

102.    Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

103.    The method and manner in which Defendant used the image of Plaintiffs further evinces that Defendant was aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendant's use of their image to advertise Defendant's businesses.

104.    Defendant has caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the establishment lifestyle and activities at Defendant's establishment.

105.    Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**(Common Law Right of Publicity)**

106.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

107.    Defendant has appropriated each Plaintiffs' likeness for Defendant's commercial purposes without authority or consent from Plaintiffs.

108.    Defendant misappropriated Plaintiffs' likenesses by publishing their Images on Defendant's website or related social media accounts as part of Defendant's advertising campaign.

109.    Defendant's website and social media accounts were designed to advertise and attract business to Defendant and generate revenue for Defendant.

110.    Plaintiffs are informed and believes and hereon alleges that the manner in which Defendant posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendant published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

111.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

112.    Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

113.    Upon information and belief, Defendant's use of Plaintiffs' Images did in fact attract clientele and generate business for Defendant's establishment.

114.    At no point did Defendant ever seek or receive permission or consent to use any Plaintiff's Image for any purpose.

115.    Defendant was at all relevant times aware that it had never received any Plaintiffs' permission or consent to use their Images in any medium for any purpose.

116.    At no point did Defendant ever compensate Plaintiffs for their unauthorized use of their Images.

117.   Plaintiffs have been damaged in amounts to be proved at trial and are also entitled to punitive damages under O.C.G.A. § 51-12-5.1 based on Defendant's actions.

## FOURTH CAUSE OF ACTION
### (Common Law Right of Privacy – False Light)

118.   Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

119.   As set forth hereon, each Plaintiff has and had at the time of Defendant's misappropriation a commercial interest in their image, photo, persona and likeness.

120.   Said commercial interest was developed by each Plaintiff through their investment of time, effort and money in their career, image, persona and likeness.

121.   As set forth herein, Defendant used each Plaintiffs' image and likeness for commercial purposes by using same in advertising.

122.   Defendant did so without any Plaintiffs' consent, written or otherwise.

123.   Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

124.   Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiffs' image and likeness were altered so as to reach a new audience and/or promote a different product.

125.   Defendant was at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote Defendant.

126.   At no point did Defendant ever compensate Plaintiffs for their use of

their Images.

127.   No applicable privilege or authorization exists for Defendant's use of Plaintiffs' Images.

## FIFTH CAUSE OF ACTION
### (Violation of Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370 et seq.)

128.   Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

129.   Defendant operated Defendant's website and social media accounts in order to promote Defendant, to attract clientele thereto, and to thereby generate revenue for Defendant.

130.   As such, Defendant's operation of the website and social media accounts, and its publication of Images thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of Georgia.

131.   Defendant's published Plaintiffs' Images on Defendant's website and social media accounts in order to create the false impression that Plaintiffs were working for, affiliated with, or endorsing Defendant's business.

132.   As such, Defendant's intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with Defendant's business.

133.   Such conduct constitutes unfair and deceptive acts and practices, and unfair competition under Georgia law.

134.   Defendant's advertising practices offends the public policy of Georgia insofar as it constitutes misappropriation of Plaintiffs' property rights in their own Images, and invasion of Plaintiffs' privacy, for Defendant's commercial benefit.

135.   Defendant's advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own

commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with Defendant's business.

136.    Defendant's advertising practices cause substantial injury to consumers by creating the false impression that Plaintiffs work for, endorse, or are otherwise affiliated with, Defendant.

137.    There are no benefits to Defendant's advertising practices as set forth hereon except a benefit to Defendant's own commercial interests.

138.    As a result of Defendant's unauthorized and misleading publication of Plaintiffs' Images on Defendant's website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

139.    As a result of Defendant's unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
### (Defamation)

140.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

141.    As detailed throughout this Complaint, Defendant has published altered Images of Plaintiffs in order to promote Defendant to the general public and potential clientele.

142.    Defendant's publication of said Images constitutes a representation that Plaintiffs were either employed by Defendant, that they endorsed Defendant, or that they had some affiliation with Defendant.

143.    None of these representations were true.

144.    In publishing Plaintiffs' altered Images, it was Defendant's intention to

create a false impression to the general public that Plaintiffs worked for, endorsed, or were somehow affiliated with Defendant.

145.  Defendant was at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by Defendant, had no affiliation with Defendant, had not consented to the use of their Images, and had not been compensated for the use of their Images.

146.  In the alternative, Defendant published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by Defendant, had no affiliation with Defendant, had not consented to the use of their Images, and had not been compensated for the use of their Images.

147.  Despite Defendant's knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

148.  Defendant's publication of Plaintiffs' Images constitutes defamation under Georgia law because said publication falsely accuses Plaintiffs of having acted in a manner—i.e., working for or endorsing Defendant's establishment—which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

149.  Defendant's publication of Plaintiffs' Images likewise constitutes defamation per se under Georgia law because said publication would tend to injure each Plaintiff in their trade, business, and profession as a professional model.

150.  This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that they were somehow working for, affiliated with, or endorsing Defendant's business - an inference which Defendant's publication of the Images

support.

151.    Defendant's publication of Plaintiffs' Images likewise constitutes defamation per se under Georgia law because, insofar as said publication falsely portrays each of the Plaintiffs working for, affiliated with, or endorsing Defendant's business, it imputes unchastity to her.

152.    Defendant's publication of Plaintiffs' Image caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SEVENTH CAUSE OF ACTION
### (Negligence and Respondeat Superior)

153.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

154.    Plaintiffs are further informed and believe and hereon allege that Defendant maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-consensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

155.    Further, Defendant should have maintained, or failed to maintain, policies and procedures to ensure that its promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

156.    Defendant owed a duty of care to Plaintiffs to ensure that its advertising and promotional materials and practices did not infringe on their property and publicity rights.

157.    Defendant further owed a duty of care to consumers at large to ensure

that their promotional and/or advertising materials and campaigns were not deceptive or misleading in its advertising practices.

158.    Defendant breached its duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

159.    Defendant further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with federal and Illinois law, were not violated. Defendant breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

160.    Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

161.    As a result of Defendant's negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

<u>**EIGHTH CAUSE OF ACTION**</u>
**(Conversion)**

162.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

163.     Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

164.    By the conduct detailed above, Defendant converted Plaintiffs' property rights in their Images for its own use and financial gain Images for its own

use and financial gain.

165.   As a result of Defendant's unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

### NINTH CAUSE OF ACTION
### (Unjust Enrichment)

166.   Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

167.   As set forth in detail above, Defendant published Plaintiffs' Images in order to promote Defendant to the general public and potential clientele.

168.   Defendant's publication was for the purpose of creating a false impression to the general public that Plaintiffs were working for, affiliated with, or endorsing Defendant's business.

169.   Defendant's purpose in publishing Plaintiffs' Images was to benefit commercially due to its purported association with, employment of, and/or endorsement by Plaintiffs.

170.   Upon information and belief, Defendant did in fact benefit commercially due to its unauthorized use of Plaintiffs' Images.

171.   Defendant has been enriched by its unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendant in attracting clientele to Defendant.

172.   Plaintiffs have not been compensated for Defendant's commercial exploitation of their Images, and thus any financial benefit which Defendant received due to said exploitation is unjust.

173.   As such, Plaintiffs have been damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
### (Quantum Meruit)

174.   Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

175.   Plaintiffs are each internationally known models who earn their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

176.   Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

177.   Although Defendant has availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at Defendant, endorse Defendant, or are otherwise affiliated with Defendant, Defendant has not compensated Plaintiffs.

178.   Plaintiffs are therefore entitled to reasonable compensation for Defendant's unauthorized use of their Images.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendant as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b) For an order permanently enjoining Defendant from using Plaintiffs' Images to promote the Night Clubs;

(c) For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117 and S.C. Code Ann. § 39-5-10, *et seq*.;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and S.C. Code Ann. § 39-5-10, *et seq.*;

(e) For such other and further relief as the Court may deem just and proper.
Dated: January 28, 2025.

/s/ John V. Golaszewski

John V. Golaszewski
New York Bar No. 4121091
**THE CASAS LAW FIRM, P.C.**
1740 Broadway, 15th fl.
New York, NY 10019
Tel: 855-267-4457
Fax: 855-220-9626
john@talentrights.law
**Pro Hac Vice Application**
**Forthcoming**

/s/ Douglas B. Chanco

Douglas B. Chanco
Bar Number: 139711
**JD LAW GROUP**
912 Holcomb Bridge Rd. Suite 203
Roswell, GA. 30076
(404) 842-0909
doug@jdgrouplaw.com

**Attorneys for Plaintiffs**