## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ARIANNY CELESTE LOPEZ, *et al*., | Case No. 1:25-cv-00359-TRJ |
| Plaintiffs, | |
| v. | |
| THE SOUND FACTORY, LLC, *et al*, | |
| Defendants. | |

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT COLUMBUS HEALTHCARE RESOURCES, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs Arianny Celeste Lopez, Claudia Sampedro, Eva Pepaj, Janet Guzman, Kimberly Cozzens a/k/a Kim Cozzens, Mariana Davalos, Rosa Acosta, Stephanie Rao, and Yodit Yemane a/k/a Jodie Joe, (collectively, "Plaintiffs"), submit this memorandum of law in opposition to the Rule 12(b)(6) motion to dismiss of defendant Columbus Healthcare Resources, Inc. ("CHR"), and state as follows:

### STATEMENT OF FACTS AS SET FORTH IN THE FIRST AMENDED COMPLAINT

Plaintiffs are nine (9) well-known professional models and actresses, each of whom earns her livelihood promoting and licensing her image, likeness and/or identity (collectively, "images") to select clients, commercial brands and media and entertainment outlets. *See* First Amended Complaint ("FAC."), Dkt. 15, ¶ 22.

- 1 -

Plaintiffs' careers in the modeling industry place an extremely high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, secure modeling contracts, and establish and maintain each of their individual brands. *Id.*, ¶ 23. In furtherance of her career, each Plaintiff seeks to control the use and dissemination of her image, is consulted on and participates in the negotiation, vetting and selection of modeling, acting, brand spokesperson or hosting engagements, and each has been vigilant in building and protection her brand from harm, taint, or other diminution. *Id.* Further, some of the Plaintiffs are social media influencers who boast millions of social media followers: Jessica Hinton has over 9.4 million such followers, FAC., ¶ 29 and Eva Pepaj has over 3.5 million such followers. *Id.*, ¶ 35.

Plaintiffs allege defendant The Sound Factory, LLC ("Sound Factory"), the owner of the nightclubs called The Sound Factory and Center Stage Bar & Lounge (collectively, the "Clubs"), misappropriated the images and trademarks of each Plaintiff, altered them, and then used them in the Clubs' advertising to create the false impression with the public that Plaintiffs worked at, endorsed, or were otherwise affiliated at the Clubs. *Id.*, ¶¶ 24, 30, 33, 36, 39, 42, 45, 48, 51, 54, 60, 61, 78, and Exhibits A-I thereto.

Plaintiffs further allege that at times relevant to the FAC, CHR was Sound Factory's landlord, *id.*, ¶¶ 3 at Page 20 of the FAC; [1] that CHR "knew, had reason to know and/or was willfully blind in not knowing that The Sound Factory had violated Plaintiffs' trademark rights and was using Plaintiffs' images in advertising without consent," *id.*, ¶ 4; and that CHR "knowingly facilitated the infringement of each Plaintiff's trademark," *id.*, ¶5, by "renting the premises to The Sound Factory's and thus contributing to The Sound Factory's infringement." *Id.*, ¶ 7.

## ARGUMENT

### I.    <u>Standard on a Rule 12 motion.</u>

CHR's motion turns on the argument that it was not aware of Sound Factory's illicit advertising practices while it was leasing space to it. *See* Mov. Br. at 5. Not only is this factually inaccurate, as discussed *infra*, but it is irrelevant for purposes of a Rule 12 motion.

On a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded facts in Plaintiffs' complaint as true, as well as all reasonable inferences drawn from those facts. *McGinley v. Houston*, 361 F.3d 1328, 1330 (11th Cir. 2004). "Not only must the court accept the well-pleaded allegations as true, but these allegations must also be construed in the light most favorable to the pleader."

---

[1] The paragraphs in the filed FAC were misnumbered; all allegations as to CHR are found on pages 20-21 of the FAC.

*Harvin v. JP Morgan Chase, N.A.*, 2022 WL 1604783, *3 (N.D. Ga. Apr. 27, 2002) (citing *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011). *See also, Snell v. NES Admis. Servs., Inc.*, 20-cv-03693-CC-RDC, 2021 WL 2666879, at *3 (N.D. Ga. Mar. 29, 2021) (ultimate question on a Rule 12 motion "is not whether the claimant will prevail, but whether the complaint alleges enough facts 'to raise a reasonable expectation that discovery will reveal evidence' supporting a claim." (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## II.  Landlord liability for trademark infringement is well-established.

As noted in Plaintiffs' motion for leave to file the FAC, *see* ECF No. 12, contributory liability for a landlord who the evidence shows has knowledge of, induces, or is willfully blind to trademark infringement by a tenant is well-established. *See Luxottica Grp, S.p.A. v. Airport Mini Mall, LLC*, 932 F.3d 1303, 1313 (11th Cir. 2019) (holding, after trial, that a "landlord may be contributorily liable for its (sub)tenants' direct trademark infringement if the landlord intentionally induces the infringement *or* knows or has reason to know of the infringement while supplying a service (such as space, utilities, or maintenance)."); *Coach v. Goodfellow*, 717 F.3d 498, 505 (6th Cir. 2013) (affirming grant of summary judgment against landlord defendant for contributory trademark infringement "because he knew or had reason to know of the infringing activities and yet continued to facilitate those activities by providing space and storage units

to vendors without undertaking a reasonable investigation or taking other appropriate remedial measures."); *Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143 (7th Cir. 1992) (in post-bench trial decision, holding that landlord may be contributorily liable for trademark infringement that occurs on its leased premises but finding no evidence in the record to support such finding); *see also, Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 265 (9th Cir. 1996) (reversing Rule 12 dismissal of contributory trademark infringement claim where plaintiff had alleged actual or constructive knowledge of trademark infringement that was occurring the landlord's leased premises).

Each of these cases emphasize the fact-intensive analysis in which courts engage concerning what a landlord knows or should know; this analysis cannot be conducted on a Rule 12 motion and thus this authority supports denial of CHR's motion. *See also*, *Tiffany (NJ), Inc. v. eBay, Inc.*, 600 F.3d 93, 107 (2d Cir. 2010) (holding, after week-long bench trial, that "[f]or contributory trademark infringement liability to lie, a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary.").

As a counter, CHR cites *Motium, Inc. v. Leung*, 20-cv-00869-CJC, 2020 WL 6050596 (C.D. Cal. June 1, 2020) where the court granted a landlord's Rule 12

motion to dismiss a landlord's contributory liability claim (with leave to amend) on the grounds that

> Plaintiffs allege no facts tending to show that the Landlords knew or should have known about the Direct Infringers' infringement…. [n]or do they allege any facts tending to show the Landlords were willfully blind, i.e., that they suspected wrongdoing and deliberately failed to investigate. Even the Landlords kept track of everything the Direct Infringers were stored and shipped in the leased space…. [t]hey would have no reason to know about the online infringing activity.

*Motium*, 2020 WL 6050596, at *4. The *Motium* court contrasted the facts there with those in *Luxottica*, where the Eleventh Circuit found evidence existed "sufficient to support a jury finding that the defendants had at least constructive knowledge of, or were willfully blind to learning, which subtenants were directly infringing Luxottica's trademarks." *Luxottica*, 932 F.3d at 1314.

*First*, as noted *supra*, the Eleventh Circuit's decision in *Luxottica* was rendered after a trial in the district court, and its reliance on the evidence presented at trial underscores the fact-intensive inquiry courts will undertake as to what a landlord knew or reasonably should have known concerning its tenants' infringing behavior.  In the face of this Eleventh Circuit authority, *Motium* -- which in the nearly six years since it has been decided has never once been relied on by any court -- is unavailing. [2]

---

[2] CHR also cites *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 985 (9th Cir. 1999, *see* Mov. Br. at 9, but that summary judgment decision did not arise in the landlord/tenant context and is rife with discussion concerning the evidence uncovered during discovery. *See Lockheed*, 194 F.3d at 984 ("All evidence in the record

*Second*, unlike the plaintiff in *Moutium,* Plaintiffs did in fact allege constructive knowledge and willful blindness.

*Third*, and perhaps most fatal to CHR's motion, annexed as Exhibit 1 are screenshots from the Sound Factory social media pages taken today, February 12 2026, which demonstrate that even though CHR has been on notice of Sound Factory's direct infringements since, at the latest, January 12, 2026 when it was served with the FAC, those infringements are ongoing. CHR is not merely willful blind to its tenant's infringements; it unquestionably has direct knowledge of them. As underscored by *Luxottica*, there is no requirement that a landlord be on notice of infringements as of the date the infringement started and CHR never suggests any such requirement; rather, the question is whether something put a landlord on notice of those infringements while they were ongoing and what, if anything, the landlord did about them. *See Coach* 717 F.3d at 505 (6th Cir. 2013) (landlord knew about infringements "yet continued to facilitate those activities by providing space and storage units to vendors without undertaking a reasonable investigation or taking other appropriate remedial measures."). So while Plaintiffs concede they do not currently know the date CHR learned of its tenant's many infringements, nor know what if anything CHR has done or is doing to address these infringements, it

---

indicates that [defendant's] role differs little from that of the United States Postal Service…."). *Lockheed* has no relevance to this Court's Rule 12 evaluation.

is beyond dispute CHR has direct knowledge of ongoing infringing activity by its tenant.

This is particularly important considering the harm Plaintiffs' Lanham Act claims seeks to address. Plaintiffs have alleged Sound Factory used their images "to create the false impression with the public that Plaintiffs either worked at The Sound Factory's establishment, or endorsed The Sound Factory's businesses," FAC, ¶ 78, and this Court has recognized that false impression continues as long as Plaintiffs' images remain posted on the Sound Factory social media pages:

> Although plaintiff initially posted the Raper quote and BBDO name on its website in 2000, the material remained on the site until May or June 2005… ***The resulting injury, in this case the untruthful suggestion that BBDO endorsed SCQuARE, arguably continued to occur as long as plaintiff's website displayed the false endorsement,*** up to and including May or June 2005, when plaintiff finally removed the material. *See Cleveland Lumber Co. v. Proctor & Schwartz, Inc.*, 397 F.Supp. 1088, 1093 (N.D. GA. 1975) (applying Georgia law, stating that "the statute of limitations runs from the happening of *any* given injury") (emphasis added).

*SCQuARE Int'l, Ltd. v. BBDO Atlanta, Inc.*, 455 F.Supp.2d 1347, 1370-71 (N.D. Ga. 2006) (emphasis added) (citing *Hanna v. McWilliams*, 213 Ga. App. 648, 651 (1994). Since Plaintiffs' harm from the false affiliation with Sound Factory is ongoing, CHR's reference to the *Motium* holding that the landlord there "would have no reason to know of the online activity," Mov. Br. at 9, is irrelevant as CHR clearly has reason to know of the ongoing online infringing activity by its tenant.

*Finally,* CHR alludes to, but does not develop, an argument that even if CHR was "fully aware" of Sound Factory's illicit advertising activity, that alone would not make CHR contributorily liable under the Lanham Act. *See* Mov. Br. at 7, n.1. Plaintiffs are not so sure and CHR cites no authority to support this bare claim. But putting aside the fact that the issue of CHR's ultimate liability is not now before this Court, the argument itself backfires on CHR because it underscores the fact-intensive nature of the contributory liability inquiry courts in the Eleventh Circuit undertake in light of the holding in *Luxottica* a landlord may be contributorily liable when it "knows or has reason to know of the infringement while supplying a service (such as space, utilities, or maintenance)." *Luxottica*, 932 F.3d at 1313 (11th Cir. 2019). As such, this argument supports denial of CHR's motion.

## III.  Plaintiffs have asserted a colorable claim for contributory infringement.

As explained by the Eleventh Circuit

> A claim for contributory trademark infringement … has two elements: (1) a person or entity commits direct trademark infringement under the Lanham Act; and (2) the defendant (a) "intentionally induces" the direct infringer to commit infringement, (b) supplies a "product" to the direct infringer whom it "knows" is directly infringing (actual knowledge), or (c) supplies a "product" to the direct infringer whom it "has reason to know" is directly infringing (constructive knowledge).

*Luxottica,* 932 F.3d at 1312 (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982)). When applying the Supreme Court's decision in *Inwood* to

"service providers" like landlords, "there are two ways in which a defendant may become contributorily liable for the infringing conduct of another: first, if the service provider 'intentionally induces another to infringe a trademark,' and, second, if the service provider 'continues to supply its [service] to one whom it knows or has reason to know is engaging in trademark infringement.'" *Tiffany*, 600 F.3d at 106 (quoting *Inwood*, 456 U.S. at 854).

CHR does not challenge Plaintiffs' claims for false advertising and false association against the alleged direct infringer, Sound Factory, and these and other similarly situated plaintiffs have *obtained summary judgment* on false advertising and false association claims against direct infringers who have used their images in commercial advertising. *See Edmondson v. Velvet Lifestyles, LLC*, Case No. 15-cv-24442-JAL, Dkt. 174 (S.D. Fla. July 28, 2017); *Underwood v. KAB Business Holdings, Inc.*, Case No. 5:20-cv-00881-JDW, Dkt. 41 (E.D.P.A. Mar. 31, 2021).[3] Plaintiffs thus roundly meet the first prong under *Luxottica*.

As to the second prong: as discussed in *Luxottica*, "[a]cross the circuits, a consensus has developed that willful blindness is one way to show that a defendant has constructive knowledge in cases of contributory trademark infringement." *Luxottica*, 932 F.3d at 1312 (citing cases). This is precisely what Plaintiffs have alleged. *See* FAC, ¶ 4 at 20 (alleging Columbus Healthcare "knew, had reason to

---

[3] Copies of these opinions are Exhibits 2 and 3 to this brief.

know and/or was willfully blind in not knowing that The Sound Factory had

violated Plaintiffs' trademark rights and was using Plaintiffs' images in advertising

without consent.").  Though not necessary for purposes of a Rule 12 motion,

Plaintiffs' evidence of ongoing infringing activity by Sound Factory roundly

supports this allegation, which is itself fatal to CHR's motion.

## CONCLUSION

The Court should deny CHR's motion.

To the extent the Court is inclined to grant CHR's motion on any grounds,

Plaintiffs' respectfully request leave to amend the FAC to address any perceived

deficiencies therein.

Dated: February 12, 2026

*/s/ John V. Golaszewski*
John V. Golaszewski *
The Casas Law Firm, PC
1325 Ave of the Americas, 28th Fl.
New York, New York 10019
T: 646-872-3178
F: 855.220.9626
john@talentrights.law
*\*admitted Pro Hac Vice*
*Attorneys for Plaintiffs*

*/s/ Douglas B. Chanco*
Douglas B. Chanco
GA Bar Number: 139711
JD LAW GROUP
912 Holcomb Bridge Rd., Suite 203
Roswell, GA 30076
(404) 842-0909
doug@jdgrouplaw.com
*Local Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of February 2026, I filed the foregoing electronically through the CM/ECF system, and will mail a stamped version via USPS to the entity's Physical Address as follows:

THE SOUND FACTORY, LLC
c/o Marcades Daugherty (registered agent)
2050 Cheshire Bridge Rd. 1127
Atlanta, GA 30324

*/s/ John V. Golaszewski*
John V. Golaszewski